Your Honor, I'd like to reserve five minutes for rebuttal. Well, that's fine. You'll have to keep track of your time. Thank you, Your Honor. And stop when you need to. Will do. Thank you, Your Honor. May it please the Court. My name is Seth Gerber, and I represent the appellants and cross-appellees Sally Giblin and Eric Kaufman. This case raises fundamental questions about federalism and how a federal court addresses issues of form selection, choice of law, and prevailing party issues. In this case, Lockton has sued Sally Giblin and Eric Kaufman in federal court in Missouri. Both Mr. Kaufman and Ms. Giblin are California residents. They worked for Lockton in California. They performed all their services in California primarily for California-based clients. When they resigned from Lockton, they filed suit in California State Court. Well, counsel, I think we might, from my perspective at least, sort of jump to the merits of what's happening here because there are so many different causes involved, if that's all right. I'd like to ask you about the form selection cause because I think that probably is first up. What's your understanding of what the district court ruled on? Did it just rule on the procedural validity of the form selection clause? That is to say what I would call as venue aspects, which is one thing that the clause did. Or did it also rule on the question of the substantive enforceability of the clause in the sense that the question would be whether the clause gave a cause of action for its breach? Thank you, Your Honor. I think those are two, to my mind, those are two different, two distinct aspects of this one clause. So I'm just wondering, did the district court rule on both of those or just what I would call a procedural venue aspect? Your Honor, it's my understanding the court ruled on the substantive issue as to whether the form selection clause is enforceable under federal law. This was Wait a minute, enforceable how? Is it for choice of venue or for the purposes of giving rise to a cause of action for breach? It was for the purpose of giving rise for a cause of action for breach. It was also in response to the declaratory relief claim. Why does, I'm sorry. This was an unusually procedurally postured case. Under Atlantic Marine, the traditional manner in which a party challenges the enforceability of a form selection clause is by filing a motion to dismiss for form nonconvenience, which is what Lockton did in both California cases. Let me ask you, I understand that, but let me ask you this. The court just applied federal law here, right? Yes, Your Honor. And so, I mean, that would indicate to me that it was making a procedural ruling on where venue would go because that's where the federal interest is. But if it was ruling also on the substantive enforceability in terms of the clause's capacity to generate a cause of action for its breach, then that would be, seems to me to be something that would be ruled by the substantive law of Missouri. And I think under either standard, the court was misapplying the precedent, whether it was procedural or substantive, because the Bremen decision stated very clearly a contractual choice of form clause should be held unenforceable if enforcement would contravene a strong public policy of the form in which suit is brought, whether declarative or not. Okay. But did you preserve this issue? We believe we have, Your Honor. But there's some question about that according to the other side. And according to them, you only cited federal cases, federal law, which would indicate that you were not going to the enforceability in terms of the clause's ability to give rise to a cause of action. Well, we did address it under federal law, and that's the authority that the district court relied on. But you didn't say, no, no, this has got something else here. We want a ruling on whether they have a claim on this, or at least that's one of the rulings you wanted. You just went ahead with it, right? You just sort of conceded that federal law was what was applicable. Am I correct? I'm not trying to – I believe the case was briefed under the federal precedent, which is what ultimately the court relied on. Okay. All right. Thank you. And under that precedent, the court misapplied Bremen and every case in the Eighth Circuit by not analyzing California's fundamental non-waivable public policy. The court looked to the contractual choice of forms, public policy and law, instead of the undesignated form, which is what occurred in the Bremen case when the U.S. Supreme Court analyzed America's public policy under the Bissell case in determining whether or not to enforce a London form selection clause in a maritime dispute in which the underlying case was filed in the undesignated form in the U.S. District Court in Tampa, Florida. And that's a fundamental mistake of the district court here, is that the district court did not in any way consider California's fundamental public policy in looking at Bremen. The court also erred, respectfully, in its choice of law analysis. The court did not perform 188.2 analysis in addressing where the parties contracted, where the parties negotiated for their contract, the place of performance, the domicile and the place of incorporation. All of those factors under 188.2 point to California. Ms. Giblin and Mr. Kaufman signed their agreements in California. They were offered agreements on a take-it-or-leave-it basis. They performed all of their work for Lockton in the state of California. They're licensed California resident insurance brokers who were performing work for Lockton's Pacific Series, which is an independently operated series with its headquarters in Los Angeles, California. And although that particular limited liability company is incorporated in Missouri, the balance of the factors all point to California. And so California would have been the choice of law in the absence of the choice of law clause. In determining which state had a materially greater interest, all of those factors point to California. If you look to the Eighth Circuit precedent in the Baxter case, the key question in that case was where Mr. Morris resided. And in the Baxter case, Mr. Morris had left the state of California, but the Eighth Circuit was looking at where is the residence, where were these workers residing. And in that case, the person had actually moved out of California, so California did not have a materially greater interest. But the facts in this case are different. In this case, Ms. Giblin and Mr. Kaufman at all times while they worked for Lockton resided and worked in the state of California as California licensed insurance brokers working for the Pacific Series primarily servicing California clients. And in these facts, California has a materially greater interest. What is occurring here is a company headquartered in Missouri that wants to evade fundamental California public policy that has been in existence for 153 years. It is one of four states that has had a ban of non-compete. That's not a mystery or surprise to major multibillion-dollar corporations that choose to conduct operations in the fifth largest economy in the world. They know what the law is, but yet Lockton does not want to comply with it. And so they're seeking to circumvent California law and public policy by misusing procedure and foreign selection and choice of law clauses to circumvent what they are doing, which is engaging in unfair competition and illegal conduct in the state of California. And so in performing the choice of law analysis, the court did not look to which state has a materially greater interest in consideration of that public policy, and there is a clear conflict here. Missouri will enforce reasonable restrictive covenants, and I'll talk about that in a minute. California will not. It has been a ban on the books since the very first civil code was adopted in California in 1872. And in light of that conflict, the court should have applied California law under the choice of law analysis, just as the court should have considered California's public policy under the Bremen holding by the U.S. Supreme Court. But the district court here did neither of those two things. And as a result, the court analyzed the restrictive covenants in this case under Missouri law. But even under Missouri law, what Lochtan did was draft extremely overbroad, unreasonable restrictive covenants, and that's what this district court held. And it did so knowingly in violation not only of California law, but in violation of Missouri law, because the Whelan v. Kennebrew case was decided by the Missouri Supreme Court in 2012. Four years later is when these agreements were entered into in 2016. The member agreements signed by Ms. Giblin and Mr. Kaufman that they signed in California were sent to them by Lochtan in 2016, four years after Whelan v. Kennebrew. And Whelan v. Kennebrew made clear that the key question is in order to protect customer relationships, you must limit the restriction to those customers that the individual had personal contact with so that they can't leverage that personal relationship to engage in unfair competition. And in Whelan v. Kennebrew, the Missouri Supreme Court rewrote and modified a restriction that barred Kennebrew from soliciting any clients of Whelan. The court said that's overbought. You can't bar a departing employee from soliciting any clients of the company. And the court rewrote, modified those covenants to limit it to the specific customers of Mr. Kennebrew. And so that was on the books four years before Lochtan wrote these agreements and had the party sign them. But what did Lochtan do? They wrote agreements in Section 5.4a through 5.4a, 1 through 5, that barred Ms. Giblin and Mr. Kaufman from soliciting, accepting business from, or servicing any customers of the series they work for or any affiliate worldwide in any jurisdiction where they do business or where they could do business in the future. It is directly opposed to Whelan v. Kennebrew putting aside California public policy. And when the district court applied Missouri law and looked at these covenants, the court said these are unreasonably overbought, and he modified them, and he limited them to 49 customers of Ms. Giblin and 79 customers of Mr. Kaufman. And after doing that, the court then had to address who's the prevailing party because Lochtan could not prove that Ms. Giblin or Mr. Kaufman solicited any of their former customers, that they stole any confidential or trade secret information, or that they solicited any employees or breached their fiduciary duties. Ms. Giblin and Mr. Kaufman prevailed on 10 of the 13 claims in this case. So the court analyzed the prevailing party issue under the main issue analysis, not the net prevailing party. And even though they had done nothing wrong other than ask a court in California to apply the law to their agreements, the judge decided in this case, Judge Boo, that Lochtan was the prevailing party. Let me have another question, please, counsel, with respect to fees, the trade secrets claim. I think Lochtan claims that it's settled, that claim. Is that correct? That is not correct. There was no settlement. What there was when these individuals settled. Senator, they negotiated important concessions. The evidence in the record shows that when Ms. Giblin and Mr. Kaufman were onboarded and hired by Alliant, and their lawyers engaged in a remediation process in which forensic consultants went through their personal devices and accounts and searched for, preserved for evidence, and then permanently deleted and returned all of their information. Lochtan came back later and demanded some additional steps that led to nothing, no further discoveries of evidence, no evidence that things had been missed, and asked for additional declarations. That was provided, and then they voluntarily dismissed these claims within days of both jury trials, because they were not going to win those cases. They're not entitled to attorney's fees under the Defend Trade Secret Act unless they can establish willful and malicious misappropriation of trade secrets. That's what the statute requires. There has been no such finding in this case. But if I can just go back to the prevailing party issue, Your Honor, with respect to the law in Missouri under the Paradise case. Paradise is directly on point. And what Paradise says is that when a court modifies a non-compete agreement, the defendant is the prevailing party, not the plaintiff who sought to enforce the agreement as signed. They claim they won on the reframed non-solicitation issue. Right? Which they claim is an entire winning, is an entire success. Is that their argument? That is their argument. But Paradise v. Midwest Asphalt Coatings, 316 Southwest 3rd, 327, is directly on point. Yeah, they're trying to distinguish that case. Well, what they try and say, Your Honor, is they didn't really try and enforce their agreement as they wrote it, which is telling in and of itself, because the way they wrote it four years after Kennebrew was directly against Missouri law. It sought to bar them from soliciting any clients of Lockton worldwide. That's 65,000 clients. So when they filed their complaint, they only mentioned three of the five provisions in Section 5.4a. But what happened next was they sought to enforce those three provisions, 5.4a1, a3, and a5. But those provisions as written state, for example, that Ms. Giblin and Mr. Kaufman cannot solicit any customers that they had access to confidential information about, and the testimony from Tim Noonan, one of their witnesses, was that means every client, because once they have access to the client database, they have access to information about all of Lockton's clients, and the evidence in the record shows that's a bar on soliciting all clients. And so what the court ultimately did was rule that they can't solicit 49 and 79 listed clients. That's different than the actual language that they did seek to enforce, which is a subset of the broader restrictive covenant in the actual agreement. And so when you start paring this down and look at that they had multiple provisions that barred the solicitation of every client that flew in the face of Whelan v. Kennebrew, and under the Paradise holding, Ms. Giblin and Mr. Kaufman should be the prevailing parties. And respectfully, unless Your Honors have further questions, I'll save the remainder of my time. Very well. Mr. Falconer, you may proceed. Thank you, Your Honor, and may it please the court. Obviously there are a lot of issues in the briefs. I've got three that I would like to highlight for the court, because I think they open up a very simple and straightforward path to affirmance. Could you speak up just a little, please, sir? Yes, is this better, Your Honor? There's a little button on the side of the thing there. You can raise it a little bit if that will help you. Is that better? That's better, thanks. Thank you, Your Honor. The main thing I want to do is answer whatever questions the court has. I'm prepared to discuss any of the issues. But here are the three that I would like to highlight. First is on choice of law. There are two concessions in the reply brief that are effectively dispositive and establish that Missouri law applies. Second is on the restrictive covenants. Picking up on the discussion with appellant's counsel, I'd like to walk through the structure of the covenants and talk about what we sought to enforce and what we did not seek to enforce, because the district court did not have to rewrite or modify anything to give us 100% of the relief that we had requested. And finally, on the prevailing party determination, I just would like to walk through the different factors and considerations that all indicate the enforceability of these restrictive covenants was the main issue in this dispute. Economic considerations, res judicata, precedent considerations, business strategy, all of them point to Lockton being the prevailing party. On the choice of law issue, I'd like to discuss the internal affairs analysis. As the court knows, the enforceability of the choice of law clause, the first step is to ask, what is the default state? Which state's law applies in the absence of a choice of law clause? And here that's Missouri, because these covenants relate to the internal affairs of these LLCs. Members of an LLC are like shareholders of a corporation or partners in a partnership. They own the business. And there's two concessions on the reply brief on this. One is there is no argument in the reply that if the covenants are matters of internal affairs, Missouri law does not apply. The only argument is that they are not matters of internal affairs. So if they are internal affairs, Missouri law applies. The parties are in agreement on that. And there is a statute, a Missouri statute, that answers this question directly. Section 347.186, subsection 5, subpart 7. I think it's little part D. It's a long statute. Restrictive covenants in series LLC agreements are matters of internal affairs, period. The only response to that in the reply brief is buried in a footnote. It's on page 3, I believe, footnote 4, where they say, well, that statute applies to operating agreements, and these covenants are in the member agreements. That argument does not get out of the gate. The member agreement and the operating agreement are a single integrated agreement. That's in section 7.11 of the member agreement, which is on page 1118 of the appendix. The whereas clauses in the member agreement, section 1 of the member agreement, section 2 of the member agreement, all of them say the member agreement and the operating agreement incorporate each other by reference and are construed together as one contract. The Missouri Court of Appeals has actually addressed this question about Lockton's agreements in the JTL consulting case and said that when a Lockton member signs the member agreement, they become bound by the operating agreement. This issue is open and shut. Internal affairs makes Missouri the default state. Missouri law applies on the merits. On the merits of the restrictive covenants, I'd like to talk about the structure of the covenants. What was the second concession? The second concession, Your Honor, is that the statute 347.186 deems these to be matters of internal affairs. There's no argument about that statute. They just try to say the statute doesn't apply based on this member agreement, operating agreement distinction. Let me ask you, why does that matter? It seems to me that there's an argument that the district court correctly decided that the former question, that California's interest in the dispute was not materially greater than Missouri's. That's also a fully sufficient basis to affirm what the district court did. Yeah, that's a different track. Correct, Your Honor. I'd think of that as a second step of the three-step analysis. Does California have a materially greater interest? And there's a little confusion.  Go ahead. Sorry. The appellant's brief discusses the Section 188A factors, which are not materially greater interest factors. That's the test that looks to just what state has a relationship and is the default state. On the materially greater interest, I think Emerson, the case that we relied on in our brief, is factually on point that both Missouri and California have some interest in this dispute. But there is a strong thumb on the scale in a contract case of enforcing the contract as written. It's not enough to show that California has some interest, or even that it has a little bit more of an interest than Missouri, which it doesn't here. They would have to show that it has a materially greater interest than Missouri. And there's no argument they do, given Missouri's interest in regulating a Missouri limited liability company, given Missouri's interest in protecting its own businesses from unfair competition, which is an interest the Supreme Court recognized in the Whelan case, and given the state of Missouri's interest in protecting businesses that are organized here from economic loss. That's in the Stone surgical case from the Sixth Circuit that we cited in our brief. All of those are material interests for the state of Missouri that foreclose any effort by the appellants to say that California's interest is greater. Thank you. On the merits of the covenants or the enforceability of the covenants, I'd like to just point to a few pages in the record that I think dispel some confusion that may have arisen about what happened. The covenants themselves are on page 1113 and 1114 of the appendix. It's section 5.4A of the member agreement. And as Mr. Gerber explained, they have five subparts. Subpart 1 says that a member cannot solicit or service customer accounts belonging to the Pacific Series that that producer personally worked on, that they produced it, solicited it, worked on the account, had confidential information about it. Subsection 3, also limited to accounts they had personal contact with that belonged to another locked-in series. Subsection 5, same restriction, personal contact of locked-in affiliates. Those are the only parts of the covenants that locked-in ever sought to enforce. And I'd like to provide the court with a few sites on this. In our complaints, page 57 and 58 of the appendix is the Kaufman complaint. Page 1062 and 1063 is the Giblin complaint. Those are the pages where we say, in pertinent part, here are the covenants we'd like to enforce. Only citing subsections 1, 3, and 5. Not citing subsections 2 and 4, which apply to accounts they did not have personal contact with. When we move for summary judgment, we were as clear as we could be. We are not seeking to enforce anything except sections 1, 3, and 5. That is, this is not in the appendix, but in the Giblin matter, it's docket 235, pages 12 to 13, paragraphs 39 through 41 in the statement of facts of our motion. In the Giblin matter, docket 226, pages 15 to 16, paragraphs 49 to 52 in the statement of facts. If there was any doubt, we sent waiver letters in January of 2024, permanently and irrevocably waiving any right or intent to enforce the covenants as to any client, other than the clients who Ms. Giblin and Mr. Kaufman personally did business with. That is what the district court enforced. We said, please find subsections 1, 3, and 5 enforceable as to these two appellants. And just so there's no confusion, here's a list of the customers who the covenants apply to. 49 for Ms. Giblin, 79 for Mr. Kaufman. Everyone knows the score. We're talking about a defined set of specific customers. That is what Judge Buse said was enforceable. So the arguments about severance, modification, reformation, none of that comes into play. The court enforced those three covenants as written and as requested by Lockton at every step of this litigation. The agreement itself adverts to the possibility of a reformation. Does it not? Is that of relevance? It does, Your Honor, but I don't think it's relevant here because no reformation of this agreement was needed. I mean, if it had been needed. It's a kind of reformation. Pardon me? It's a kind of reformation. Well, the provision I would, the second one is Section 7.5. Right before that in Section 7.4 is the provision that says every covenant in this agreement is independent of the other. Okay. And us enforcing or not enforcing one doesn't waive any other covenant. Okay. So we enforce them independently. And I think that's the Wheeling case says if that's, if you're enforcing these covenants as written and they only apply to specific customers, there's no question in Missouri law that they're enforceable that way. And we don't hear an argument from the appellants that they're not enforceable in that more limited scope. There's an argument that maybe we try to enforce them more broadly. I just walked the court through the record sites that show that that's not true. The other argument we heard was that the last part of Sections 1, 3, and 5 talks about customers to whom, for whom the producer had access to confidential information. And Giblin and Coffman would like the court to take that and blow it up to be every customer of the series, to take that one part, I think it's subsection E, and make it coextensive with subsections 2 and 4 of the covenants. And there's a couple reasons just for basic contract interpretation. We know that's not what that means. One is that if having access to confidential information meant every customer of Lockton, it would render subsections 2 and 4 superfluous, which we don't do when we're interpreting contracts. The other reason, and I'm not sure if I'm saying this right, is the canon nos catera socius. We know the meaning of a word by the company that keeps that provision is at the end of that term, they have access to it in the same way they produce, solicit, service, or work on the business. Those covenants are limited to the accounts they personally touched, not every customer of the business. That's not a plausible way to interpret the agreement. On the prevailing party determination, unless the court has other questions about the covenants, we've explained, I think in our briefing, four separate considerations that explain why the enforceability of these covenants was the main issue. The main issue in a case is just what it sounds like. It's the most important issue, the one whose resolution is most consequential in the real world. And we've got four considerations that we've pointed to for why the declaratory relief we obtained on the covenants are enforceable under the law we agreed to, in the court we agreed to, was the most consequential issue in the case. One is the res judicata effect of the judgments in this case that will shut down those California cases that were filed in breach of the forum selection clause. One is the economic benefit to Lockton of Mr. Kauffman and Ms. Giblin not being able to solicit their clients. They each filed complaints in California saying, we want to go solicit these customers. We want to try to take this business. Ms. Giblin had a $7 million book of business. Mr. Kauffman had about a $2.5 million book at the time he left. That is real money, and it is a worthwhile benefit to Lockton to retain that business. There's also the precedential value of having enforceable restrictive covenants in the litigation that's ongoing between Lockton, Alliant, and six other producers currently in the Western District of Missouri. Alliant is bankrolling that case just the way it is indemnifying Ms. Giblin and Mr. Kauffman in this case. The enforceability of the covenants will be an important part of Lockton's litigation strategy in that case. The last piece of it is just the significance to Lockton's business model and business strategy that we have a producer member model where our producers are business owners. They're not employees. They pay taxes on a K-1. They choose to own the business, and our view is they choose to take on a higher degree of responsibility to the business by becoming part owners of the business. And these restrictive covenants are part of that. Mr. Kauffman and Ms. Giblin both still to this day are receiving seven-figure payouts from Lockton spread out over the course of five years, which is consideration for their honoring these restrictive covenants. That is an obligation they assumed as owners. It is a cornerstone of Lockton's business model. Unless there are other questions on any of those issues or any of the other appellant issues, I'll turn briefly to our cross-appeal points. I'd like to start, if I could, with the 30-day notice issue. And essentially what happened there is the district court took a 519-word contract provision and it interpreted it as though it only had nine words. The way the district court and the appellants are reading this provision, its meaning would not change if all it said was a producer member may be terminated as a member. But that's not what it says. And this provision is at pages 37, 13, and 14 of the appendix. Section 510A of the operating agreement goes on to lay out seven specific scenarios under which a producer member may be terminated. As far as your position, does that actually list the exclusive ways that this can occur? Yes, Your Honor. That's essentially your position, is it not? Correct, Your Honor. And we cited some case law in our brief on that. When a list in a contract is introduced by including, it is illustrative. If it's not introduced by including, it is exhaustive. That's the standard way we interpret lists in statutes and contracts. So I think this is related. What's the importance of when the fiduciary duty vanishes? Is it relevant to your breach of fiduciary duty claim? Correct, Your Honor. What was the substance and what damages did you assert? We had not put forward a damage model in the district court. I'm sorry? We had not put forward a damage model in the district court. One example is Mr. Kaufman and Ms. Giblin were compensated during those 30 days where, in our view, they were still members, but they had gone to work for Alliant. So at a minimum, there would be a clawback right to the significant compensation they received during that period. And one point I wanted to bring out about Section 510A, I think the parties are in agreement that the only ways to terminate an LLC membership interest are with 90 days' notice or in a manner authorized in the operating agreement. That is Section 347.121 of the Missouri statutes. And so I think Mr. Kaufman and Ms. Giblin agree. If they're going to say that they effectively terminated, they have to point to textual footing in the operating agreement because they certainly didn't give 90 days' notice. And I wanted to draw out something in Section 510 that wasn't in our briefs. The section starts with those seven options for termination, and then at the bottom there's some flush language that talks about, well, which of these terminations automatically transfer the membership interest back to Lockton, and which ones don't? And it says two of them, death and disability, automatically transfer the membership unit back. Five of them don't. There has to be an exercise of a put or call right. I think that's another nice illustration to Judge Arnold's point. Those seven options are exclusive. Those are the ways you can terminate your membership interest in the operating agreement, and it's undisputed that Mr. Kaufman and Ms. Giblin did neither one. The last point I'll touch on with my remaining time is our request for damages that we've incurred because of their breach of the forum selection clause. And on this point, there's just a single concept I want to draw out. We tried to focus on this in our briefing. The conceptual error, the category error in the district court's decision, is not appreciating the difference between attorney's fees that are incurred as a primary loss, as the loss caused by a wrong, and attorney's fees that are incurred as enforcement expenses, the cost of vindicating some other primary wrong. There is no bar to recovering attorney's fees as damages when the fees themselves are the loss. And that is essentially what the district court said, is because these are attorney's fees, you need to go seek them as a prevailing party in California. That can't possibly be right. It cannot be the case that to vindicate our rights under the forum selection clause, we have to forfeit those rights and go litigate in California. That's the right the clause gives us, is to not have to do that. The California litigation is still going on. It's on hold, is it? That's correct, Your Honor. So where would you submit the final bill? I mean, you're going to be claiming for, including appeals, presumably, if you went on the principle. Is that correct? I think that's correct, Your Honor, yes. Would it be to the district court a conclusion of the California litigation? I think. It seemed to me you made some of the fact you already had a judgment in that you should be able to recover the fees in the trial court. Is that what you're saying? Yes. What we would ask is to go down and we had put in evidence, uncontested evidence, the amount of our fees as damages. Okay. So it's kind of a partial bill. Correct, Your Honor. And so the breach is complete. I mean, they've breached the. . . Right, but it's not over. Correct. So if the breach continues, they would have the option to walk away. They can stop their breach any time by dismissing those cases. If they choose to continue breaching, we will have a decision to make whether we want to file another claim. Some suggested you would have to prevail before you were entitled to fees. Would that be true? Not on the damages for the breach of the form selection clause, Your Honor. Our view is no. We don't have to show that we prevailed on other claims to get damages for that breach claim. That would be true under the alternative argument we made about how Section 718, the fee-shifting provision, would be broad enough to capture these fees if they were enforcement expenses. But because they're damages, our ability to recover them does not hinge on. . . So that statement that you would have to prevail is simply untrue. That's. . . Do you have to show. . . Under this primary theory, I'll call it. I'm sorry, Your Honor. Consequential damages as a damage theory. Right. Well, not under the agreement, but just as a damage theory. Flowing from the fact that the litigation was filed. Correct, Your Honor. There's somebody's judgment on breach. The damages flow from that. Yeah, yeah, exactly. Right, that's right. And so the prevailing party analysis is for enforcement expenses, not damages. And so that we would ask the court to remand to the district court to do that calculation and award those damages, whether on summary judgment or if a trial is needed. That would be for the district court to do in the first instance. And so if there are no other questions, we'd ask the court to affirm on the issues that we briefed in the main appeal and reverse and render on the enforceability. On the 30-day notice provision being mandatory, not permissive, and reverse and remand for a damages award on the breach of the forum selection clause. Thank you. Thank you, Counsel. All right, Counsel, you may proceed. The main issue in this dispute is set forth in the very introduction to the Fourth Amendment complaint, in which Lochtan alleged that Ms. Giblin and Mr. Kaufman engaged in a raid, that they breached their duties, that they solicited their clients, that they misappropriated confidential and trade secret information and solicited other employees. None of that was true. They lost or dismissed every single one of those ten claims. This case has come here on rulings of declaratory relief and breach with respect to a forum selection choice of law and a determination about a restrictive covenant, which the district court said was unreasonably overbroad as written. Counsel says, well, the court enforced Section 5.4A1. That's not what the court did. The language of 5.4A1 of the restrictive covenant says, quote, any of the customer accounts of the series produced by the member, solicited by member, in case of prospective customer accounts, serviced by member, for or about which member acquired or had access to confidential information, or with which member has had, has or had business contact, end quote. That was the breadth of the contract just with respect to 5.4A1 as written. The court did not enforce that. The court modified that language and limited it to 49 listed clients for Ms. Giblin and 79 for Mr. Coffman. And under the holdings from the Missouri Court of Appeals, the prevailing party under the Paradise case should therefore be Ms. Giblin and Mr. Coffman. Counsel, on the prevailing party, one thing that really stands out to me in the case is the large amount of attorney's fees expended here compared to the relatively small monetary recovery that was actually sought for the alleged breach. Does that in and of itself indicate that these issues like choice of law and forum selection were really the, that's what this fight was really about? It's a great question, Your Honor, and the answer is no. Because what happened in the case is they served very broad-ranging discovery. They sought information with respect to every customer or employee these people had contact with. There were many depositions taken all on these central issues about misappropriating trade secrets and soliciting employees and soliciting customers. And when the damages experts' reports came out after the discovery proved none of that had occurred, they could only focus on a few clients that they contended were solicited. So then we deposed those few clients, and they flat-out refuted the notion that there was any improper solicitation. And so the damages expert, on the night of the close of discovery, withdrew her opinions, refused to show up for her deposition the next Monday, and then they dismissed those last two claims shortly before trial. That's what occurred. We had to undergo a vast amount of discovery and significant expense to disprove the allegations that my clients engaged in wrongdoing. That was the main issue, Your Honor. With respect to the 30 days, the language was permissive, and with respect to the California fees, the judge had it right. You can only recover damages in the action for the fees incurred in such action. Thank you, Your Honors. All right. Thank you very much, counsel. The case has been well presented today. We appreciate your arguments. The case is submitted. Court will adjourn the decision in due course. Is there anything further this afternoon?